# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

UNITED STATES OF AMERICA, *ex rel.* )
BARBARA MORGAN,                     )
                                    )
    Plaintiff-Relator,          )
                                    )   Case No.  1:13-cv-1593
              v.                   )
                                    )
CHAMPION FITNESS, INC., and JEFF    )
SCHADE,                             )
                                    )
    Defendants.                 )

# <u>ORDER & OPINION</u>

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint. (Doc. 36). The Complaint alleges, in one count, numerous violations of the False Claims Act, 31 U.S.C. § 3729 *et. seq.* ("FCA"). Defendants assert Relator fails to plead with particularity as required under Federal Rule of Civil Procedure 9(b), fails to state a claim under Federal Rule of Civil Procedure 12(b)(6), the equitable doctrine of laches bars Relator's claims, and the Complaint should be dismissed for failure to properly serve process pursuant to Federal Rule of Civil Procedure 12(b)(5). For the reasons stated below, Defendants' motion (Doc. 36) is DENIED.

### FACTUAL BACKGROUND[1]

Defendant Champion Fitness, LLC, is an Illinois limited liability company which provides, possibly among other things, physical therapy services. Defendant

---

[1] All well-pleaded allegations are taken to be true in reviewing motions to dismiss, so this section is largely drawn from the Complaint. *Heng v. Heavner, Beyers & Milhar, LLC*, 849 F.3d 348, 351 (7th Cir. 2017). The procedural background is summarized from the docket.

Jeff Schade was the owner of Defendant Champion Fitness during the time specified in the Complaint and when the Complaint was filed. Relator Barbara Morgan, through her company Morgan Office Assistance, was contracted to assist Defendant Champion Fitness with its billing.

Relator alleges Defendants billed the United States through Medicare Part B for physical therapy services not actually rendered by the licensed physical therapists submitting the claims. Although Relator alleges this practice began before 2006, the Complaint specifically alleges 280 occasions in 2010, 174 occasions in 2011, and 35 occasions in 2012 where Defendants submitted bills for physical therapy performed or supervised by Defendant Schade which either would have occurred at overlapping times or where it would have been impossible for Defendant Schade to be present in one location so soon after being in another location. Thousands of occasions in which other therapists who worked for Defendants billed similarly impossible sessions are also alleged in the time period between 2010 and 2012. The Complaint examines the specifics of three instances in 2010 and 2011 of fraudulent billing by Defendant Schade and two instances, one in 2010 and one in 2011, of fraudulent billing by other physical therapists.

The instant qui tam action was filed in late December, 2013. (Doc. 1). The Complaint was filed in camera and under seal pursuant to 31 U.S.C. § 3730(b)(2). It took nearly nine months and an instruction from Magistrate Judge Hawley to submit a status report before any further activity occurred. (Doc. 25 at 1). The United States filed ten motions for extension of time for the Government to decide if it would intervene in the lawsuit. (Docs. 4, 6, 7, 10, 12, 14, 18, 20, 22, 24). On April 12, 2018,

this Court denied the Government's tenth motion for an extension and ordered the Government to inform the Court whether it would intervene within twenty-one days. (Doc. 25 at 5–6). The United States notified the Court that it was declining to intervene on May 3, 2018. (Doc. 26). It thus took the Government four and a half years to determine whether it would intervene. On May 10, 2018 the Court ordered the record unsealed, and ordered Relator to serve Defendants in accordance with Federal Rule of Civil Procedure 4 if she wished to proceed. (Doc. 27 at 6).

Defendants were served on August 7, 2018, 89 days after the record was unsealed. (Docs. 37 at 20, 43 at 1–2). Defendants filed the Motion to Dismiss currently before the Court on August 21, 2018. (Doc. 36). Due to Relator's counsel failing to properly follow the Local Rules, as set forth in this Court's Order dated September 6, 2018, (Doc. 41), the deadline for opposition passed without response. However, with Defendants' agreement that a substantial injustice would be worked if Relator did not have an opportunity to respond (Doc. 40), the Court granted in part Relator's Motion for an Extension of Time (Doc. 39), allowing Relator twenty-one more days to file a response. (Doc. 41). Precisely twenty-one days later, Relator filed a response and proof of service. (Docs. 42, 43). At that point, over four years and nine months had elapsed since the filing of the Complaint.

## Legal Standards

Federal Rule of Civil Procedure 8(a)(2) requires that complaints include "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must "give the defendant fair notice of what the claim is and the

grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and alterations omitted).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7¸* 570 F.3d 811, 820 (7th Cir. 2009). This Court "must accept as true the well-pleaded factual allegations in the complaint" but does not "credit legal conclusions, or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.' " *Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018) (quoting *Ascroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The facts alleged in the complaint, accepted as true, must "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombley*, 550 U.S. at 570).

Rule 9(b) imposes a heightened requirement on plaintiffs "alleging fraud or mistake": complaints implicating these grounds "must state with particularity the circumstances constituting fraud or mistake." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC¸* 836 F.3d 770, 776 (7th Cir. 2016) (quoting Fed. R. Civ. P. 9(b)). The Seventh Circuit has repeatedly made clear that the FCA is an anti-fraud statute, so claims made pursuant to the FCA are subject to the Rule 9(b) standard. *E.g.¸ United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 778 (7th Cir. 2016).

To meet the requirements of Rule 9(b), "[t]he plaintiff must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.' " *United States ex re. Berkowitz v. Automation Aids, Inc.¸* 896 F.3d 834, 839 (7th Cir. 2018) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.¸* 570 F.3d 849, 853 (7th Cir. 2009)). The Seventh Circuit has cautioned that courts should not

"take an overly rigid view" of this shorthand, and that the precise details "may vary on the facts of a given case." *Presser*, 836 F.3d at 776 (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) ("*Pirelli*")). "Nevertheless, plaintiffs must use some means of injecting precision and some measure of substantiation into their allegations of fraud." *Berkowitz*, 869 F.3d at 840 (citations, internal quotation marks, and alterations omitted).

The plaintiff must ensure each defendant is served with a summons and copy of the complaint, and the plaintiff bears the burden, in contesting a Rule 12(b)(5) motion to dismiss for insufficient service, of demonstrating the court has jurisdiction over each defendant through effective service. *Cardenas v. City of Chicago*¸ 646 F.3d 1001, 1004–05 (7th Cir. 2011).

## DISCUSSION

The False Claims Act forbids, in relevant part, "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval" and "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1). While the Attorney General may enforce these provisions, the FCA also allows "private citizens, called relators, to bring *qui tam* suits against alleged fraudsters on behalf of the United States government." *United States ex rel. Watson v. King-Vassal*, 728 F.3d 707, 711 (7th Cir. 2013); 31 U.S.C. § 3730. The Government may intervene in such a case but if it declines to do so, as here, a relator may proceed with the case on behalf of the United States. *Berkowitz*, 896 F.3d at 840. The relator is entitled to a

percentage of the final award from a successful action either way. *United States ex rel. Conner v. Mahajan*, 877 F.3d 264, 267–68 (7th Cir. 2017).

## I. Rule 9(b)

The Court understands Defendants to make five distinct arguments that Relator's Complaint does not satisfy the requirements of Rule 9(b). First, they argue that certain specific allegations are not sufficiently alleged. (Doc. 37 at 4–6). Second, Defendants suggest the Complaint does not adequately define the time frame of the alleged violations. (Doc. 37 at 5). Third, they argue that the use of "and/or" alone violates Rule 9(b). (Doc. 37 at 6–7). Fourth, Defendants' Memorandum suggests Relator has not sufficiently plead the context of the fraud due to her failure to disclose the role she and her company may have played, as providers of billing services, and whether she notified Defendants or when she notified the Government about the fraud. (Doc. 37 at 7–8). Fifth and finally, Defendants claim the Complaint does not adequately set forth how the claims were false, "that is, information about the specific regulatory requirements that Defendants purportedly violated." (Doc. 37 at 8).

### A. The Specificity of Relator's Allegations

The challenge that Relator's allegations are not sufficiently specific relies on an overly rigid and extremely demanding reading of Rule 9(b). Over several pages which cite no caselaw, Defendants set forth numerous questions not answered by allegations in the Complaint which, they imply, demonstrate the lack of necessary particularity. (Doc. 37 at 4–6). Defendants focus specifically on Relator's allegations that group therapy was improperly billed as individual therapy, an incentive program for maximizing units billed existed which encouraged billing patients for unnecessary

medical services, the amounts of money improperly billed, and which statements Defendants made or caused to be made, and by whom.

Relator responds that in cases involving lengthy fraud, courts typically require only representative examples of the fraud to be pleaded with a high level of particularity at the motion to dismiss stage, and the Complaint includes such representative examples. (Doc. 42 at 3–4). In this, Relator is correct. The Court notes that while the Seventh Circuit appears not to have squarely considered this question, the Central District of Illinois, along with every district court in the circuit, has allowed the use of representative examples to serve as the requisite substantiation for Rule 9(b). *See United States v. Supervalu, Inc.*, 218 F. Supp.3d 767, 775 (C.D. Ill 2016); *Pacult v. Walgreen Co.*, No. 08-cv-542, 2011 WL 13209584, at *8 (W.D. Wis. June 14, 2011) (in the context of the first to file rule noting that two complaints used the same representative examples); *United States ex re. Kroenig v. Forest Pharma., Inc.*, 155 F. Supp.3d 882, 893 (E.D. Wis. 2016); *United States ex rel. Kalec v. NuWave Monitoring, LLC*, 84 F. Supp.3d 793, 800 (N.D. Ill 2015); *Womack v. Brady McCasland, Inc.*, No. 15-638, 2017 WL 2828708, at *3 (S.D. Ill. June 29, 2017); *Hess v. Biomet, Inc.*, No. 3:16-cv-208, 2017 WL 661511, at *10 (N.D. Ind. Feb. 16, 2017); *United States ex rel. Lusby v. Rolls-Royce Corp.*, No. 1:03-cv-0680, 2008 WL 4247689, at *8 (Sep. 10, 2008) (citing *United States ex rel. Snapp, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) *aff'd in part, rev'd in part* 570 F.3d 849 (7th Cir. 2009)).[2]

---

[2] Whether representative examples are necessary, as opposed to sufficient, is a more fraught question which has divided the Circuit Courts of Appeals. *See United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response., Inc.*, 865 F.3d 71, 89–90 (2d Cir. 2017) (discussing a potential circuit split on the issue, and reading

The Complaint lays out in detail five representative examples which specify the what, where, when, and who explicitly. (Doc. 1 at 12–15). Three of the examples specify Defendant Schade as the therapist and allege defendants submitted the claim, while two specify another physical therapist, identified only by initials, but also allege Defendants were the actors who submitted the claims. (Doc. 1 at 12–16) (also identifying eight other physical therapists by initials, although not providing representative examples of their conduct). In one representative example, Relator alleges that Defendant Schade billed the United States for a minimum of 240 minutes of individual physical therapy performed in a 120 minute timeframe on six patients in two locations 58 miles apart. (Doc. 1 at 12–13). Another alleges Defendants submitted claims for physical therapy performed by "MB," an employee of Defendants, in three of Defendants' offices in one morning, sometimes simultaneously, sometimes without time for MB to travel between offices if the therapy sessions lasted as long as the billing claims. (Doc. 1 at 14–15).

The Court, bound to take these representative examples as true, finds them sufficient. Each of the five examples specifies in detail—including dates, times, and locations—what made a particular bill fraudulent. This meets the required injection of precision and measure of substantiation. *Berkowitz*, 869 F.3d at 840. The arguments Defendants make regarding allegations of group therapy, an incentive program, and the amount of money improperly billed therefore do not stop the Complaint from meeting Rule 9(b)'s requirements.

---

*Lusby* as the Seventh Circuit taking the more lenient position). That issue need not be examined here, as representative examples have been supplied.

**B. The Time Period of the Alleged Violations**

The issue of the temporal operation of the alleged scheme warrants separate examination. Defendants' essential argument is that although the specifics in the Complaint relate only to events from 2010 to 2012, the Complaint also refers to activity outside of that period. (Docs. 37 at 5, 1 at 2, 11–12). The Court takes Relator's action to be for false statements occurring only between 2010 and 2012. Although Relator does not say this directly in her response, Relator does imply that all claims are within a six-year statute of limitations, (Doc. 42 at 13 n.3), meaning that references in the Complaint to times before December of 2007, (Doc. 1 at 11–12) (discussing times prior to 2006 and between 2006 and 2009), are not included. This does not, however, violate Rule 9(b), especially in light of the specificity with which the claims from 2010 to 2012 are detailed. Defendants' remedy for this inelegant drafting might be found in a motion to strike under Rule 12(f), but it does not come from a motion to dismiss.

**C. The Use of "And/Or"**

Defendants' contention that the mere use of and/or in the complaint violates Rule 9(b) is incorrect. Defendants focus on a repeated passage in the Complaint that the cause of action "arise[s] from 'false statements, records, and claims made and presented by the Defendants and/or their agents, employees and conspirators in violation of the Act.' " (Doc. 37 at 6 (quoting Doc. 1)). Defendants are fully on notice as to their roles, especially given the representative examples discussed above, which allege Defendants submitted the false claims. The Complaint alleges that false billing occurred on thousands of occasions, (Doc. 1 at 14), so it makes sense that Relator

would leave open the possibility that some of those claims might have been submitted at the direction of Defendants rather than by them directly.

Defendants cite two cases for the proposition that the mere use of and/or defeats pleading with particularity as required by Rule 9(b). (Doc. 37 at 7 n.1) (citing *Dayton Monetary Assocs. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 91 Civ. 2050, 1992 WL 204374, at *9 (S.D.N.Y. Aug. 11, 1992) *and Pulphus v. Sullivan*, No. 02 C 5794, 2003 WL 1964333, at * 10 (N.D. Ill. Apr. 28, 2003)). Far from supporting Defendants, *Pulphus* undermines their argument. Immediately following the portion of the opinion Defendants focus on, the Northern District of Illinois explained that "specific allegations" could cure the double and/or construction if they gave sufficient notice—in that case, they did not because they did not "affirmatively allege" essential elements. 2003 WL 1964333, at *10.

Similarly, in *Dayton* the Southern District of New York found that a complaint did not "plead with specificity the individual role of each defendant" and followed with an example which used an and/or construction. 1992 WL 204374, at *10. That case included a large number of individual defendants as well as corporate defendants. *Id.* at *1. Based on the phrasing of the opinion, it seems that the complaint in that case nowhere indicated which of the many defendants did what. Not so here. The use of representative examples gives a strong indication of what Defendant Schade is alleged to have done, and what Defendant Champion Fitness is alleged to have done through him or through others.

In sum, while an and/or construction could fail to provide sufficient substantiation in some cases, the representative examples in this case infuse enough

particularity that it is of no moment whether some introductory paragraphs contain allegations which would be impermissibly vague if standing alone.

### D. Relator's Failure to Indicate Her Role in the Alleged Violations

Defendants' fourth argument is meritless. The Court can find no support for a pleading requirement that Relator specify any role she may have played in the alleged fraud. To the extent Defendants are arguing Relator was required to plead her involvement due to the "who, what, when, where, and how" formulation, the Court finds that the requisite injection of precision and substantiation with regard to "who" is provided by Relator's representative allegations, discussed above, and the listing of all physical therapists by initials whose billing fit the fraudulent pattern.

To the extent Defendants meant it to support this point, the only case cited by Defendants in the section of their memorandum discussing it, *Presser*, has nothing to do with this argument at all. It is not at all clear, however, whether Defendants meant for *Presser* to support this point. Defendants spend a paragraph discussing Relator's failure to indicate her role and whether and when she reported the alleged fraud, before ending by claiming generally, "she provides no context for her broad and sweeping allegations of Defendants' purported fraud, or when it began, or when it ended" and citing *Presser*. (Doc. 37 at 7–8). If Defendants meant for this citation to support a different portion of the argument, it does not. As discussed above, Relator's allegations have a sufficient level of context in the Complaint to meet Rule 9(b)'s standard.

Ironically, Defendants' legal support for the proposition that more context is needed is taken out of context. In *Presser*, the complaint "provide[d] no medical,

technical, or scientific context which would enable a reader of the complaint to understand why [the defendant's] alleged actions amount[ed] to unnecessary care forbidden by the statute." 836 F.3d at 779. The Seventh Circuit also discussed another case in which a relator showed only that a pharmacy chain filled a prescription with a more expensive form of a particular drug on eleven occasions, but absent a showing that the pharmacy was reimbursed for the cheaper form of the drug or an unlikely pattern of billing, the allegations were insufficient to show fraud. *Id.* at 779–80 (discussing *Pirelli*, 631 F.3d at 444–45). The point of these cases is that if a claim might or might not be fraudulent depending on the circumstances, the complaint must allege the circumstances were such that the claim was fraudulent. They do not institute a requirement that Relator plead her own role, if any, in the fraudulent conduct.

### E. The Lack of Citation to Specific Regulatory Requirements

The final Rule 9(b) argument, that Relator's pleading is deficient because it fails to specify what regulatory requirements were violated, is based on the assumption that Relator is pleading a claim which requires her to show that the bills were legally false. One case, *Hanna*, is the sole source of authority for Defendants' argument. (Doc. 37 at 8–9). Defendants quote it correctly as saying Relator's investigation prior to filing should "include the specific provisions of law whose violation make the certification of compliance false." *Hanna*, 834 F.3d at 779. The sentence before the quoted passage makes clear that it is discussing legal falsity: "Where the allegedly false certification relates to a failure to comply with certain

12

statutory and regulatory provisions, the plaintiff should be able to tell the [defendant] which ones it flouted, and how and when." *Id.*

There are two broad categories of falsity recognized in the FCA. "A claim is factually false when the claimant misrepresents what goods or services . . . it provided to the Government and a claim is legally false when the claimant knowingly falsely certifies that is has complied with a statute or regulation the compliance of which is a condition for Government payment." *United States ex rel. Watkins v. KBR, Inc.*, 106 F. Supp.3d 946, 955 (C.D. Ill. 2015) (quoting *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 305 (3d Cir. 2011)). A legally false claim may be based on "implied false certification" where "the claim does not merely request payment but also makes specific representations about the goods or services provided" and "the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *United States v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447 (7th Cir. 2016) (quoting *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016)).

Relator is not consistent on whether more than one theory is being asserted in this case. *Compare* (Doc. 42 at 8) ("Relator has alleged that Defendants falsely billed the Government by making claims for payment for services . . . which were not actually provided . . . .") *with* (Doc. 42 at 11) (rejecting Defendants' contention that "Relator's claims are *solely* based upon the theory that services were provided by Defendants in violation of law"). But it is clear that Relator believes herself to be asserting that certain billings were factually false.

The Complaint never directly alleges the United States was billed for physical therapy which did not occur. However, Relator construes the specific examples provided in the Complaint as pleading Defendants billing the United States for services not actually provided. (Doc. 42 at 11). The examples are of situations where the billing shows a therapist providing individual therapy to two patients at once or in two locations without sufficient time to travel between them. (Doc. 1 at 12–15). One could infer from this that physical therapy services were not provided to at least one of the patients involved, as Relator urges in her Response. (Doc. 42 at 11). Or, one could reasonably infer the therapists were supervising the physical therapy detailed, but supervising multiple sessions at once or not on site, possibly in violation of federal regulations, as Defendants seem to assume in their motion. (Doc. 37 at 15–16).[3]

Both of these inferences are reasonable. But at this stage, the Court must "draw[] all reasonable inferences in favor of the non-moving party." *Tobey*, 890 F.3d at 645. Doing so, Relator has plausibly alleged Defendants billed the United States for services which were not provided—factually false billing. As such, it is not necessary for Relator to allege Defendants violated a regulation, only that they did not provide the services for which the Government was billed. Defendants' argument therefore fails.

---

[3] A third possibility exists for overlapping patients, that therapists were providing group therapy sessions but billing them as individual sessions as alleged in the Complaint. (Doc. 1 at 2). This, too, would be factually false. *See United States ex rel. Thomas v. Black & Veatch Special Projects Corp.,* 820 F.3d 1162, 1168 (10th Cir. 2016) (noting that an incorrect description of services submitted to the Government is a basis for a factually false claim).

## II. 12(b)(6)

Defendants argue Relator has failed to allege two elements of her FCA claim sufficiently under Rule 8: knowledge and the falsity or fraudulent nature of the requests for billing. Although Relator has indisputably alleged that Defendants knew the statements were false, Defendants argue the Complaint's allegations are conclusory. (Doc. 37 at 10–12). Conclusory allegations are, of course, insufficient to survive a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678. Defendants also argue that Relator was required to plead that any misrepresentations were material due to their interpretation of Relator's allegations as sounding in the implied false certification theory rather than factual falsity. (Doc. 37 at 13–16). This materiality requirement, Defendants claim, is not met by the instant Complaint. (Doc. 37 at 16).

### A. The Allegations of Knowledge

Defendants' first argument throws the Court into an area of the law filled with tension. On the one hand, Rule 9(b) clearly allows for "knowledge, and other conditions of a person's mind" to "be alleged generally." On the other, the Supreme Court requires plaintiffs plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As Judge Hamilton has noted, the *Iqbal* standard is at odds with the Rule 9(b) standard, and the Supreme Court's "statement about Rule 9(b) that ' "generally" is a relative term' does not solve the problem or give practical guidance to district courts." *McCauley v. City of Chicago*, 671 F.3d 611, 622–23 (7th Cir. 2011) (Hamilton, J., dissenting in part). This tension is on full display in the parties'

memoranda: Defendants seek dismissal on the grounds that Relator's allegations of Defendants' knowledge "are, without exception, conclusory in nature" (Doc. 37 at 10), while Relator claims this argument fails because knowledge may be pleaded generally (Doc. 42 at 8–9).

However well-reasoned Judge Hamilton's dissent in *McCauley* may be, and regardless of whether the standard is in tension with the language of the Rules, this Court must follow *Iqbal*. *Diehl v. URS Energy & Const., Inc.*, No. 11-cv-0600, 2012 WL 681461, at *4 n.1 (S.D. Ill. Feb. 29, 2012). In *Iqbal*, the Supreme Court instructed that "[i]n the context of Rule 9, ['generally'] is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 . . . does not give [a party] license to evade the less rigid—though still operative—strictures of Rule 8." 556 U.S. at 686–87. Defendants did not argue that Relator's pleading had not met the requirements of Rule 9(b) with regards to knowledge, but rather seek dismissal on the grounds that Relator's pleading of knowledge does not meet the standards of Rule 8. (Doc. 37 at 9–10). The question is whether, "excising the allegations not entitled to the presumption [of truth] . . . the remaining factual allegations 'plausibly suggest an entitlement to relief.' " *McCauley*, 671 F.3d at 616 (quoting *Iqbal*, 556 U.S. at 681).

The central contention of Defendants' knowledge argument is that the Complaint alleges knowledge only in a conclusory fashion. (Doc. 37 at 10). But even accepting that asserting "knowingly" is only a conclusion, the Complaint survives dismissal provided the facts in it make that conclusion plausible. "Legal conclusions can provide the framework of a complaint so long as they are supported by factual allegations." *Catinella v. County of Cook, Ill.*, 881 F.3d 514, 517 (7th Cir. 2018)

(citations, internal quotations, and alterations omitted). And the Complaint's representative examples have sufficient detail to support a reasonable inference providing the necessary factual support for the assertion of Defendants' knowledge.

Taking as true the allegations in the Complaint, Defendant Schade billed the United States for physical therapy services he could not have provided because they required him to be in two places at once or providing physical therapy to two patients at once. (Doc. 1 at 12). He did so not once or twice but nearly 500 times in the three year period at issue. (Doc. 1 at 12). It is remarkably easy to infer from this that he knew the therapy was not actually occurring, or that the billing he submitted did not properly reflect it. Even focusing on just the representative examples, Defendant Schade could not have been unaware that, for example, he had not provided units of individual therapy to two patients in Pontiac at the same time, while he also provided physical therapy to a patient 58 miles away in Paxton. (Doc. 1 at 12–13). Yet that is what he billed the United States for. (Doc. 1 at 12–13). Thus the factual allegations support, by way of a reasonable inference drawn in the light most favorable to the non-moving party, that Defendant Schade knowingly submitted the false claims. *Cf. Lusby*, 570 F.3d at 854 ("[M]uch knowledge is inferential . . . and the inference that [Relator] proposes is a plausible one").

Defendant Champion Fitness had the same knowledge. As Defendants recognize, Defendant Schade was a "key corporate decisionmaker" at Champion Fitness during the time of the alleged false claims. (Doc. 37 at 12). Having found that it is reasonable to infer Defendant Schade knew the claims he was submitting for

therapy he allegedly did not provide were false, it follows that Defendant Champion Fitness did as well.

## B. The Materiality Requirement

Defendants' argument about the materiality requirement, as with their argument that Relator was required to plead which regulations were violated, rests on the assumption that Relator is asserting a legally false claim, specifically on an implied certification theory. As discussed above, the Court finds that Relator is asserting, at least in part, a claim that the billings were factually false. *Supra* Section I.E.

The materiality standard may or may not apply in cases where factually false claims are alleged. *See United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 900 (9th Cir. 2017) (appearing to require materiality for the factually false certification that HIV drugs were FDA certified when in fact they were nonconforming goods). Defendants, however, do not argue this ground but rather argue only that "Relator was required to meet the 'rigorous and demanding' materiality standard applicable to FCA claims based upon the implied certification theory." (Doc. 37 at 16). They have therefore waived the argument that the Complaint has not properly plead factual support meeting the materiality requirement as it applies in cases of factual falsity. And regardless, the Court has difficulty seeing what could be more material than whether or not services were provided—from the detailed description of Medicare reimbursements, it is unsurprisingly clear that the Government only intends to reimburse therapists for physical therapy actually performed. (Doc. 1 at 3–7).

## III.  Laches

The doctrine of laches does not apply in this case. As the Seventh Circuit has explained, "laches provides a way of dealing with a statute that specifies no limitations period." *Lantz v. C.I.R.*, 607 F.3d 479, 483 (7th Cir. 2010). The Supreme Court has held that applying laches where a statute of limitations exists implicates separation of powers concerns. *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 960 (2017) ("The enactment of a statute of limitations necessarily reflects a congressional decision that the timeliness of covered claims" should be measured by the statute of limitations. "Therefore, applying laches within a limitations period specified by Congress would give judges a 'legislation-overriding' role that is beyond the Judiciary's power."). "Laches is a gap-filling doctrine, and where there is a statute of limitations, there is no gap to fill." *Id.* at 961; *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1024 (9th Cir. 2018) ("If the plaintiff at law has brought his action within the period fixed by the statute of limitations, no court can deprive him of his right to proceed.") (quoting *Wehrman v. Conklin*, 155 U.S. 314, 326 (1894)).

As both parties recognize, there is a statute of limitations which applies to this action, namely 31 U.S.C. § 3731(b). (Doc. 37 at 16–17; Doc. 42 at 13 n.3). Indeed, this specific provision was discussed as a point of comparison by the Supreme Court in *SCA Hygiene Products Aktiebolag*—even the dissent referenced it as an example of the typical case where a statute of limitations does not leave a gap to be filled. 137 S. Ct. at 967–68 (Breyer, J., dissenting). This Court recognizes Defendants' frustration at the pace of this action and the difficulty preparing for litigation on facts which are

nearing a decade old. *See* (Doc. 1 at 12) (alleging a particular violation in May of 2010). Nevertheless, the existence of a statute of limitations represents a congressional decision this Court may not disturb: laches is not applicable where 31 U.S.C. § 3731(b) applies.[4] *United States ex rel. Ryan v. Endo Pharma., Inc.¸* 27 F. Supp.3d 615, 631 (E.D. Pa. 2014).

## IV. Service

The parties agree Defendants were served within the 90 day period provided by Rule 4(m). (Doc. 37 at 20; Doc. 42 at 13). It is undisputed that proof of service was not filed within the 90 day period. (Doc. 37 at 19–20; Doc. 42 at 13).[5] Relator filed proof of service with the Memorandum in Response. (Doc. 42 at 13 n.13; Doc. 43). The only issue is whether failure to file proof of service pursuant to Rule 4(l)(1) during the time limit for service warrants dismissal under Rule 12(b)(5).

The Federal Rules of Civil Procedure answer this question on their face: "Failure to prove service does not affect the validity of service." Fed. R. Civ. P. 4(l)(3). Courts and treatises "have recognized that the Rule means what it says." *Colony Ins. Co. v. Ropers of Hattiesburg, LLC*, No. 2:11-cv-3, 2011 WL 1226095, at *4 (S.D. Miss. Mar. 29, 2011) (collecting cases and treatises). "Thus, the fact that [a p]laintiff

---

[4] Because the Court decides that laches does not apply on these grounds, it is unnecessary to consider whether laches would be barred for other reasons as well, such as whether laches applies in qui tam actions where the United States has declined to intervene. *See* (Doc. 37 at 17–18).

[5] The 90 day period began with this Court's Order on May 10, 2018. (Doc. 37 at 6). The Court notes, however, that Relator had received an extension of time to serve (Text Order on August 2, 2018), and although Defendants argued the Text Order should be vacated, (Docs. 32, 35), their motions were denied (Text Order on August 24, 2018). Relator therefore could have waited to serve Defendants until September 8, 2018. (Doc. 30; Text Order on August 2, 2018). The proof of service, however, was not filed with the Court until late September. (Doc. 43).

belatedly file[s] proof of service does not render the service untimely or improper." *Gusler v. City of Long Beach*, 823 F. Supp.2d 98, 123 (E.D.N.Y. 2011). The cases Defendants cite to support their argument are not to the contrary: they show only that failure to prove service of process can indicate a failure to serve process, which in turn can result in dismissal. *E.g., Freeman v. Fla. Dep't of Bus. & Prof'l Regulation*, No. 6:14-cv-333, 2014 WL 6673559, at *6 (M.D. Fla. Nov. 24, 2014) ("Summons has not issued, and Plaintiff has not filed a proof of service . . . . Accordingly, absent a showing of good cause by Plaintiff, the Court 'must dismiss' Plaintiff's claims against the Individual Defendants."). This Court finds that under Rule 4(l)(3), Relator's late submission of proof of service does not warrant dismissal where no other defect in service is alleged.

The Court nevertheless wishes to address Relator's argument that to dismiss on grounds of improper service due to failure to file proof of service "would be to elevate form over substance" because Rule 4(l)(1) is "a technicality." (Doc. 42 at 13). It can hardly be doubted that proof of service is a technical requirement. For that reason, the Rules make failure to comply not warrant dismissal. *See* 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1130 (3d ed, 2010) (Rule 4(l)(3) "prevents a defendant who has been properly served from attacking the validity of service on the technical ground of the process server's failure to make return in timely fashion, or because the return is deficient in some way.").

But the Court takes the Federal Rules, and the Local Rules, seriously. Some of their operations may indeed be technical, but the Rules serve an important function— in the case of Rule 4(l)(1), it allows the Court to know that service has occurred. And

Relator's claim is saved from dismissal by another technicality of the Rules, namely Rule 4(l)(3). Failure to adhere strictly to the Rules wastes judicial resources and increases the chance of legal snarls. Indeed, such failure has already created unnecessary issues requiring judicial resolution in this case. (Doc. 41). The Court strongly encourages counsel to take as much care with respect to form as substance to ensure the smooth and efficient resolution of this action.

## CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss (Doc. 36) is DENIED.

SO ORDERED.

Entered this 19th day of October, 2018.

s/Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
