# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* BARBARA MORGAN, <br><br>　　Plaintiff-Relator, <br><br>　　　v. <br><br>CHAMPION FITNESS, INC., and JEFF SCHADE, <br><br>　　Defendants. | Case No. 1:13-cv-1593 |

# ORDER & OPINION

This matter is before the Court on Defendants' Motion for Sanctions Under Federal Rule 11 (Doc. 57). Responses have been filed on behalf of Relator's original counsel (Doc. 68) and Relator and her current counsel (Doc. 66). No party has requested an evidentiary hearing and the Court does not think one necessary. The matter is therefore ripe for review. For the reasons stated below, Defendants' Motion (Doc. 57) is DENIED.

### BACKGROUND

There are two accounts of this case. According to Relator Barbara Morgan, this case is about a corporation and its owner, Defendants Champion Fitness, Inc., and Jeff Schade, respectively, fraudulently billing the United States through Medicare Part B for services not rendered by the licensed physical therapists who signed and submitted the claims. According to Defendants, this case is about a disgruntled ex-contractor either fabricating claims to seek vengeance on the company which fired

her or imputing a fraudulent scheme she designed and carried out to the corporation, which was completely unaware. Which of these stories will ultimately prove accurate is not the subject of the instant motion, but this fundamental disagreement is the motion's source.

The parties agree on certain facts. No one disputes Relator, through her company Morgan Office Assistance, was a third-party billing contractor for Defendants from 1998 to late 2012. A year after Defendants terminated the contract, Relator filed this lawsuit. The Complaint (Doc. 1) alleged Defendants violated the False Claims Act (FCA) by submitting claims to Medicare Part B for services not rendered by the therapist signing the claims. Relator's counsel in December 2013, when the Complaint was filed, was Rodger A. Heaton, then employed by the law firm Hinshaw & Culbertson LLP. Attorney Heaton left Hinshaw & Culbertson on September 19, 2014, and was not engaged in the practice of law thereafter. (Doc. 68-1 at 2). Relator was represented by other counsel from Hinshaw & Culbertson until after the Complaint was unsealed in May 2018 (Doc. 27), following the Government's decision not to intervene in the case (Doc. 26). On June 26, 2018, Hinshaw & Culbertson informed Relator, pursuant to their retention agreement, it would not represent her further. (Docs. 30 at 1, 71 at 3). Relator retained Attorney Michael Leonard at LeonardMeyer, LLP in July 2018 to represent her in the litigation. (Doc. 30 at 2).

Following the Court's decision (Doc. 45) on Defendants' Motion to Dismiss (Doc. 36), Defendants began threatening sanctions under Federal Rule of Civil Procedure

11. (Docs. 46 at 23, 56 at 19 n.4). Although Defendants missed both of their self-imposed deadlines (Doc. 46 at 23 ("Defendants[]' Motion for Rule 11 sanctions . . . will be filed . . . not later than November 26, 2018"); Doc. 56 at 19 n.4 ("[Defendants] will be filing a Rule 11 motion on Wednesday, December 5, 2018 . . . .")), Defendants filed the instant motion on December 7, 2018, arguing Relator, Attorney Heaton, Hinshaw & Culbertson, Attorney Leonard, and LeonardMeyer, should be sanctioned on the grounds that the Complaint included false allegations and the attorneys failed to engage in sufficient prefiling investigations or to withdraw the false allegations after receiving notice of their purported falsity. (Docs. 57, 58).[1]

## LEGAL STANDARD

"Representations in a filing in a federal district court that are not grounded in an 'inquiry reasonable under the circumstances' or that are unlikely to 'have evidentiary support after a reasonable opportunity for further investigation or discovery' violate Rules 11(b) and 11(b)(3)." *Native American Arts, Inc. v. Peter Stone Co., U.S.A., Inc.*, 222 F. Supp.3d 643, 644 (N.D. Ill. 2016) (quoting *City of Livonia Emps. Ret. Sys. & Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754, 762 (7th Cir. 2013)). The party seeking Rule 11 sanctions must establish a *prima facie* case that sanctionable conduct has occurred by filing a motion "based upon non-frivolous allegations" at which point "the burden of proof shifts to the non-movant to show it made a reasonable pre-suit inquiry into its claim." *Priddle v. Malanis*, No. 12-cv-5831,

---

[1] Because Defendants assert the law firms are liable solely due to the conduct of Attorneys Heaton and Leonard, respectively, the Court will proceed using "Attorney Heaton" and "Attorney Leonard" to refer to both the attorneys and the related firms.

3

2017 WL 2080328, at *2 (N.D. Ill. May 15, 2017) (St. Eve, J.) (quoting *Diego, Inc. v. Audible, Inc*, 505 F.3d 1362, 1368 (Fed. Cir. 2007)).

Rule 11 utilizes "an objective standard of reasonableness" which leaves "no room for an 'empty head, pure heart' defense." *N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 885 (7th Cir. 2017). In other words, the inquiry is neither whether a party believed the claims to have support nor whether the party acted in good faith; the sole questions are whether the party acted reasonably under the circumstances to ensure the truth of the allegations and whether the allegations were made without reasonable evidentiary support. The Seventh Circuit has cautioned courts should only doubt the Rule 11 representations " 'after carefully analyzing the legal and factual sufficiency' of the allegations of malfeasance." *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 905 F.3d 537, 543 (7th Cir. 2018) (quoting *FDIC v. Tekfen Constr. & Installation Co.*, 847 F.2d 440, 444 (7th Cir. 1988)).

"Although a court must credit the well-pled allegations of the complaint when deciding a motion under Rule 12(b)(6), [it is] not so confined when considering a motion for sanctions." *Tobey v. Chibucos*, 890 F.3d 634, 652 (7th Cir. 2018). It should therefore come as no surprise that in reviewing this motion, the Court may doubt what it must take as true in reviewing other motions.

## DISCUSSION

Defendants' Rule 11 notice (Doc. 60-1) charges the statements comprising ¶¶ 37-41 of Relator's Complaint as well as "numerous additional paragraphs" which "include but are not limited to Complaint paragraphs 42-50" are false. (Doc. 60-1 at

4

3). Paragraphs 37-41 describe in detail five representative examples of the fraud Relator alleges while ¶¶ 42-50 allege, in less detail, other instances where the therapist claiming to have performed the services similarly could not possibly have done so. ¶¶ 37-41. (Doc. 45 at 8 (describing the relevant paragraphs)). Defendants allege, based on their claim the statements are false, that Relator and her attorneys submitted statements to the Court in signed pleadings, and those statements either lacked a reasonable basis in evidence or were made without a proper pre-filing investigation into their truth. Relator, Attorney Heaton, and Attorney Leonard naturally reject this allegation and oppose sanctions.

It is unnecessary to fully recite all of the challenged allegations here. However, because the language in the statements is essential to determining whether sanctions are warranted, an example is necessary. Paragraph 37 alleges, among other things: (1) "Billing for physical therapy supervised or personally performed by the defendant, Jeff Schade," occurred at overlapping times in multiple places on numerous occasions; (2) "For example, on May 24, 2010, defendants submitted claims for 4 units of physical therapy for services purportedly provided by Jeff Schade" to two patients at 10:00 a.m. in Paxton, Illinois and "Jeff Schade [also] filed claims for providing 3 additional units" of physical therapy services at 10:30 a.m. in Paxton; (3) "Jeff Schade also claimed to have provided an initial evaluation and two timed units of physical therapy" to one patient "and 4 timed units of physical therapy" to another patient at 11:00 a.m. on the same date in Pontiac, Illinois, 58 miles away. (Doc. 1 at 12). The

5

Complaint continues in this fashion, describing conduct by Defendant Schade as well as another therapist named Michael Bennington.

With these challenged statements described, the Court turns to the allegations that the attorneys and Relator submitted statements without a reasonable evidentiary basis in signed documents or failed to perform reasonable prefiling investigations.

## I. The Motion May Properly Be Heard at This Time

Relator and Attorney Leonard's Response argues Defendants are improperly attempting to litigate the merits of the case on a Rule 11 motion. In the legal standard, they cite a turn of phrase from the Seventh Circuit and several cases out of the Northern District of Illinois which they suggest stands for the proposition that Rule 11 ought not allow litigation of the merits of the case. (Doc. 66 at 6-7). However, the Seventh Circuit case stands for the opposite proposition and, although the Northern District cases might appear at first glance to stand for the proposition cited, a more careful reading reveals they do not.

In *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Financial Services, Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993), the Seventh Circuit stated:

> When Rule 11 was adopted it was obvious that it could turn into a battleground for satellite controversies wherein, in effect, the tail would wag the dog, potentially diverting judicial resources from the prompt disposition of the merits of controversies. But, on balance, the need to protect against meritless and frivolous claims and the need to have appropriate sanctions to enforce professional ethical standards, and party and attorney discipline, prevailed. The "jury may still be out" on the efficacy and, perhaps, the efficiency of the Rule, but it is the Court's duty to enforce it.

6

This passage clearly instructs district courts to enforce the rule, rather than limiting the circumstances where such enforcement is allowed. However, the Northern District has recently been utilizing a portion of this quotation for a different proposition: "Courts have cautioned that Rule 11 should not be used as 'a battleground for satellite controversies where, in effect, the tail would wag the dog, potentially diverting judicial resources from the prompt disposition of the merits.' " *Lundeen v. Minemyer*, No. 09 C 3820, 2010 WL 5418896, at *2 (N.D. Ill. Dec. 17, 2010) (quoting *Harlyn Sales*, 9 F.3d at 1269); *Cartwright v. Cooney*, 788 F. Supp.2d 744, 755 (N.D. Ill. 2011); *Lanphere v. 1 Corp.*, No. 10 C 4774, 2012 WL 1965436, at *2 (N.D. Ill. Apr. 23, 2012) (Report and Recommendation, adopted as modified 2012 WL 1966010); *Sean Morrison Entm't, LLC v. O'Flaherty Heim Egan & Birnbaum, LTD.*, No. 11 C 2462, 2012 WL 4468443, at *1 (N.D. Ill. Sep. 21, 2012); *Dunnhumby USA, LLC v. Emnos USA Corp.*, No. 13 C 0399, 2013 WL 12306482, at *2 (N.D. Ill. Dec. 12, 2013). Relator and Attorney Leonard appear to interpret this oft-quoted idiom as essentially barring Rule 11 sanctions early on in a case.

*Harlyn Sales* means no such thing. And examination of the Northern District's cases indicate Relator and Attorney Leonard have taken them out of context: while "Rule 11 ordinarily should not be used as a proxy to litigate the merits of a case," the Northern District has separated this used of Rule 11 from pursuing a claim that a plaintiff has failed "to engage in a meaningful investigation." *Lanphere*, 2012 WL 1965436, at *3–*4. Thus, in every case cited above, the Northern District used the quotation from *Harlyn Sales* as a lead-in to explain that the standard under Rule 11

7

looks not at whether a claim has merit, but rather whether there was an objectively reasonable inquiry into the facts and law. At best, Relator and Attorney Leonard have mistakenly taken a quotation out of context. At worst they misrepresent the law.

When courts talk about litigating the merits of the case in a Rule 11 motion, typically they mean actually reaching the issue of whether the claim can stand. *E.g. Griswold v. Cty. of Hillsborough*, No. 08-cv-2066, 2009 WL 248174, at *3 (M.D. Fla. Jan. 30, 2009). In their motion, Defendants have alleged Relator made false statements in her Complaint which her counsel would have known—and been able to prevent—had they engaged in reasonable investigations. Defendants also allege twenty-three allegations out of thousands lacked evidentiary support, providing evidence the contentions cannot be supported. Whether or not Defendants' allegations are correct, they can properly be reached on a Rule 11 motion, even one made at this stage of the litigation.

## II. The Allegations in the Complaint Have a Sufficient Evidentiary Basis

Defendants' central contention is that the allegations comprising the representative examples in the Complaint are false, demonstrably so. But they misread the allegations. Regardless of any other carelessness in the challenged allegations, each one avers either Defendant Schade or Bennington *claimed* to have provided or *billed Medicare* for providing (or, potentially, supervising) physical therapy services in the 23 instances Defendants challenge. Defendants' rejoinder that other providers actually provided the services does not help them.

It is important to ensure the forest is not lost for the trees. Relator must show Defendants made a claim for payment from the United States and the claim was, in

8

some respect, false. While it may be a strong defense, when combined with materiality requirements under the FCA, to assert the services were actually provided and the only inaccuracy was the name of the provider, it does not bear on whether the signatory claimed to have provided the services. The exhibits Defendants have submitted may demonstrate that hypothetical allegations suggesting Defendant Schade or Bennington *provided* (or, again, possibly supervised) physical therapy services would be false; they do not, however, demonstrate allegations that the same individuals *submitted claims indicating they provided* the services are false.

Underlying the factual question is a legal one. What, precisely, does a therapist certify when signing the form submitting a claim to Medicare? The parties' arguments on this point are not well developed. Defendants assert it is common industry practice to have forms signed by a physical therapist who did not personally perform or directly supervise the physical therapy services. (Doc. 58 at 4, 6-7). Relator maintains the signature certifies the signer personally either provided or supervised the services. (Doc. 66 at 11-15). Neither party provides any support for their view. But Defendants provide documentation supporting Relator's.

The claims forms submitted by Defendants are signed by Defendant Schade or Bennington in Box 31, "Signature of Physician or Supplier," on the third page of each of their exhibits (Docs. 60-2–60-24). By signing that box, the signatory certifies "the statements on the reverse of the form" apply. (*E.g.* Doc. 60-2 at 3). One of the statements is "the services on this form were . . . personally furnished by me or were

9

furnished incident to my professional service by my employee under my direct supervision, except as otherwise permitted by Medicare." (*E.g.* Doc. 60-2 at 4).

Rule 11 does not require a factual contention be correct, and the Court does not reach the question of whether it is. For a lack of evidentiary support to be sanctionable, the evidentiary support must be beyond "undoubtedly weak"; the claims must be "devoid of factual support." *Bilharz v. First Interstate Bank of Wis.*, 98 F.3d 985, 989 (7th Cir. 1996). The records discussed above suffice to show an evidentiary basis to allege Defendant Schade or Bennington either claimed to have personally provided or directly supervised the physical therapy services in those instances specified in Relator's Complaint. Again, the effect of those signatures is a legal question on which much of this case may turn; the Court is not ruling on that question here. The only holding is the challenged claims in the Complaint are not "so devoid of factual support that sanctions [are] appropriate." *Id.*

"In the Complaint" is an important caveat. Defendants' motion clearly springs from the Court's holding that it was reasonable to infer from the Complaint Relator was asserting claims of factual, rather than legal, falsity. (Doc. 45 at 14). And the Court is not dissuaded from believing that was a reasonable inference based on the papers then before the Court. But Relator argued ¶¶ 37-50 of the Complaint "alleged that Defendants falsely billed the Government by making claims for payment for services that were purportedly provided, but which were not actually provided" and "detail[ed] Defendants' failure to provide services at all, while submitting claims for payment for such services." (Doc. 42 at 8, 11). Based on the submissions on the instant

motion—including Relator and Attorney Leonard stating "the Complaint means exactly what it says: the claims were false because Defendants claimed to Medicare that Schade" supervised or provided services in two places at once (Doc. 66 at 8)—the Court is concerned there was no evidentiary basis to boldly state the physical therapy services simply did not occur, as opposed to noting the falsity of the statement was apparent due to impossibility even if the nature of the falsehood could not be determined without discovery.[2] The Court hopes there is an explanation other than expediency for the argument and is eager to hear it; Relator and Attorney Leonard are ordered to show cause within fourteen days of the date of this Order why they should not be sanctioned for making a statement devoid of evidentiary support, namely that Defendants had failed to provide services at all. Fed. R. Civ. P. 11(c)(3).

### A. *"Provided" and "Performed" Do Not Mean "Provided or Supervised"*

In a diversion from the central point of the Rule 11 allegations at bar, the parties join issue on whether the Complaint alleges in the challenged allegations that Defendant Schade (or Bennington, in some instances) provided or supervised the physical therapy services despite the language in the Complaint stating only "provided" or "performed." This is a satellite issue. Defendants' notice under Rule 11's safe harbor provisions did not suggest the allegations were false or misleading because of the slippage regarding supervision, and so this is not an independent basis on which they can seek sanctions in the instant motion. Defendants also assert

---

[2] While factual contentions may be made without sufficient factual support if the certifying party believes it is likely such support will be uncovered in discovery, such statements must be "specifically so identified." Fed. R. Civ. P. 11(b)(3).

11

Defendant Schade and Bennington did not supervise more than one session in the challenged allegations regardless, making this a moot point.

The Complaint ought to say "supervised or provided" where it means supervised or provided. While the Court is not unsympathetic to the contextual argument advanced by Relator and Attorney Leonard, the Court also notes the Complaint is subject to heightened pleading standards under Rule 9(b). More care should have been taken to specify the accusations. This is especially true with representative examples, which serve to provide sufficient substantiation for a claim to go forward without all instances being plead in the full "first paragraph of any newspaper story" format. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). Because the safe harbor notice did not specify this, however, and because Defendants do not move on this ground specifically, sanctions will not issue. Relator and Attorney Leonard are advised that amendment to the Complaint would be wise to make clear where the allegations are disjunctive.

### III. The Attorneys Engaged in Reasonable Investigations

Although the Court concludes there is a sufficient evidentiary basis for the allegations in the Complaint, Defendants also claim Relator's Attorneys failed to perform a reasonable investigation into the evidentiary basis. These claims are serious and could serve as independent bases for sanctions. However, the Court believes both attorneys properly investigated the challenged allegations.

*A. Attorney Heaton*

Attorney Heaton argues he should not be sanctioned because (1) he engaged in an objectively reasonable investigation; (2) sanctions ought not be imposed on counsel no longer participating in the case and, therefore, unable to correct or withdraw a filing; and (3) the allegations in the Complaint are not frivolous, as demonstrated by this Court's ruling on Defendants' motion to dismiss. (Doc. 68 at 1-3). The Court agrees that Attorney Heaton engaged in an investigation reasonable under the circumstances. Fed. R. Civ. P. 11(b).³

The whole of Defendants' argument as to why Attorney Heaton should be sanctioned is their assumption that he did not press Relator for documents, a conclusion they reach solely because no documents were attached to the Complaint. (Doc. 58 at 9-10). Defendants recognize that a complaint does not generally require attached documentation, but they think the fact that attaching documents is "a common practice" means the lack of attached documents supports their conclusion. (Doc. 58 at 10). Defendants assert that if Attorney Heaton had pressed Relator for further documentation, he would have uncovered documents showing the challenged allegations were false. (Doc. 58 at 10). Not only do Defendants fail to support this assertion, they undermine it. According to Defendants, Relator was not at that time

---

³ The Court rejects Attorney Heaton's third argument. It would be a valid point if the motion for sanctions were premised on Rule 11(b)(2), *Okulovich v. Durham & Durham, LLP*, No. 17-cv-132, 2017 WL 4355258, at * 6 (S.D. Ind. Oct. 2, 2017). However, where the motion is premised on Rule 11(b)(3)—that is, false or unsupported factual contentions—a ruling on a motion to dismiss under Rule 12(b)(6) has absolutely no bearing on the appropriateness of sanctions. *In re Reuscher*, No. 97-2010, 1998 WL 93965, at *2 (7th Cir. Mar. 2, 1998) ("[M]erely stating a claim does not demonstrate that [a party] adequately inquired into the facts . . . .").

13

in possession of the records they claim show the allegations were false. (Doc. 58 at 6 (stating Relator "must have thought that if she didn't download the actual available information of who in fact provided these services, then it would be okay to simply accuse [Defendant] Schade instead.")). In short, this argument is bordering on frivolous.

Under the circumstances, Attorney Heaton's investigation was reasonable. Prior to filing the Complaint, Attorney Heaton affirms he met with Relator for around twenty hours, reviewed the documents and information in her possession, and questioned her about the billing system, other potential witnesses, and the documentation she provided. (Doc. 68-1 at 3-5). The Court notes that, pursuant to the FCA, the Complaint was filed under seal and then taken to the United States Attorney's Office for further investigation. It is not clear from where Attorney Heaton could have uncovered further information if not from Defendants themselves. And there is no "pre-pleading requirement that plaintiffs ask nicely for information they need—but cannot compel access to—before filing their complaint." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 677 (7th Cir. 2016).

To the extent Attorney Heaton meant the use of "provided" in the challenged allegations to mean "supervised or provided" (Doc. 68 at 11), his drafting was not as straightforward as it should have been. Indeed, the addition of the word "performed" and the slippage between "performed," "provided," and "supervised" has—clearly— injected unnecessary confusion into this case. But Defendants do not ask for sanctions on this basis, and inelegant drafting ought not be a basis for sanctions, especially

where the attorney anticipated significant time to amend before the other party would need to respond. *See* Fed. R. Civ. P. 15(a)(1) (tying the time to amend to service). For these reasons, the Court denies Defendants' motion for Rule 11 sanctions against Attorney Heaton and Hinshaw & Culbertson LLP.[4]

   B.   *Attorney Leonard*

Defendants' allegation that Attorney Leonard failed to press Relator for documents is meritless for the same reasons as the same allegation against Attorney Heaton is meritless. Defendants also suggest Attorney Leonard had an obligation to attempt to learn why Hinshaw & Culbertson declined to continue as Relator's counsel and why the government declined to intervene in the case, as well as review Defendants' communications to those parties. (Doc. 58 at 10).

Regardless of whether Attorney Leonard had such a duty, he affirms he spoke at length with Attorney Dan Purdom, the attorney handling Relator's case at Hinshaw & Culbertson at the time that firm declined to continue representing Relator, about Hinshaw & Culbertson's decision to withdraw and the government's communications with Attorney Purdom about declining to intervene. (Doc. 66-1 at 2-3). He also affirms he spoke with Relator about Hinshaw & Culbertson's decision not

---

[4] The Court finds it unnecessary to reach Attorney Heaton's argument that sanctions would be inappropriate because he was unable to amend or withdraw the Complaint during the time provided by Rule 11's safe harbor procedure, but notes its skepticism and Attorney Heaton's failure to develop this argument. Attorney Heaton cites *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005) for this proposition, but *Holgate* also states "[t]he signing requirement in Rule 11 makes clear that any attorney who, at any time, certified to the court that a pleading complies with Rule 11 is subject to the rule, even if the attorney later withdraws from the case." *Id.* at 677.

15

to continue representing Relator and the government's decision not to intervene. (Doc. 66-1 at 2-3). The Court has no reason to doubt Attorney Leonard's affidavit.

Attorney Leonard does not claim to have reviewed Defendants' communications with Hinshaw & Culbertson or the government. Regardless, his burden was to thoroughly investigate the evidentiary support for the allegations in the Complaint. This obligation to conduct a reasonable investigation was met. The Court also notes, with approval, Attorney Leonard investigated the allegations again when he received the Rule 11 notice from Defendants. (Doc. 66-1 at 5). The Court therefore denies Defendants' motion for Rule 11 sanctions against Attorney Leonard.

## IV. Expenses

Rule 11(c)(2) provides: "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fees may be awarded regardless of "whether the movant or the target of the motion" prevails. Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Fees and costs under this provision are not themselves sanctions: "there is no requirement in the rule's text or commentary that the movant's conduct be found worthy of sanction" for fees to be appropriate where the non-movant prevails. *Adhikari v. Daoud & Partners*, No. 09-cv-1237, 2017 WL 5904782, at *3 (S.D. Tex. Nov. 30, 2017).

Defendants' motion for sanctions was baseless. The documents attached, far from proving statements in the Complaint were false tend to demonstrate the truth of those allegations. Therefore, the Court thinks it warranted to award expenses and attorneys fees to Attorney Heaton and Hinshaw & Culbertson, so long as those expenses are reasonable, and an award of expenses and fees to Attorney Leonard,

16

LeonardMeyer, and Relator may be warranted as well. Defendants will pay Attorney Heaton and Hinshaw & Culbertson, who bear no responsibility for the current circumstances, the full cost of defending against this motion. The Court reserves the question of whether Defendants shall pay Relator and Attorney Leonard until the Court rules whether their prior statements were sanctionable.

## Conclusion

Defendants' Motion for Sanctions Under Rule 11 (Doc. 57) is DENIED. However, Relator and Attorney Leonard are ORDERED TO SHOW CAUSE within fourteen (14) days of the date of this Order why sanctions should not issue for making a factual contention without sufficient evidentiary support, namely asserting "Defendants falsely billed the Government by making claims for payment for services . . . which were not actually provided" and Defendants failed "to provide services at all, while submitting claims for payment for such services" in their Response to Defendants' Motion to Dismiss (Doc. 42 at 8, 11). Defendants SHALL pay the reasonable costs and expenses incurred by Attorney Heaton and Hinshaw & Culbertson in defending against the instant motion. The Court RESERVES the question of whether Defendants shall pay Attorney Leonard's and Relator's costs and fees until resolution of the Order to Show Cause.

SO ORDERED.

Entered this 19th day of February 2019.

                                                  s/ Joe B. McDade
                                                  JOE BILLY McDADE
                                                  United States Senior District Judge