# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

UNITED STATES OF AMERICA, *ex rel.* )
BARBARA MORGAN, )
                     )
     Plaintiff-Relator, )
                     )     Case No.  1:13-cv-1593
         v. )
                     )
CHAMPION FITNESS, INC., and JEFF )
SCHADE, )
                     )
     Defendants. )

## ORDER & OPINION

This matter is before the Court on Relator's Motion to Dismiss Defendants' Counterclaims (Doc. 51). For the reasons stated below, Relator's Motion (Doc. 51) is GRANTED IN PART and DENIED IN PART.

### BACKGROUND[1]

Defendant Champion Fitness, owned at the times relevant to this suit by Defendant Jeff Schade, hired Relator Barbara Morgan in 1998 as a third-party specialist to handle billing for physical therapy services. Initially, she received 6% of revenue received from government and private insurers, which was later increased to 7.5%. In November 2012, Defendants terminated her employment.

---

[1] All well-pleaded allegations are taken to be true in reviewing motions to dismiss, so this section is largely drawn from the Countercomplaint. *Heng v. Heavner, Beyers & Milhar*, *LLC*, 849 F.3d 348, 351 (7th Cir. 2017). The procedural background is summarized from the docket.

In late 2013, Relator filed this *qui tam* action alleging Defendants violated the False Claims Act (FCA) by submitting claims for reimbursement through Medicare. The Complaint (Doc. 1) was unsealed in May 2019. Following this Court's denial of their Motion to Dismiss (Docs. 36, 45), Defendants filed an answer and counterclaims (Doc. 46). Specifically, Defendants filed a claim under the FCA, five claims seeking contribution or indemnification under different theories, and two claims seeking disgorgement of Defendants' payments to Relator. Relator responded with the instant motion (Doc. 51).[2]

## LEGAL STANDARD

Rule 12(b)(6) allows motions to dismiss on the ground that a complaint does not state a claim upon which relief may be granted. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "To survive a motion to dismiss, the [allegations in a complaint] must state a plausible claim to relief." *Ochoa v. State Farm Life Ins. Co.*, 910 F.3d 992, 994 (7th Cir. 2018) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has the requisite plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Archer v. Chisholm*, 870 F.3d 603, 612 (7th Cir 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court takes as true all well-pleaded allegations in the complaint and construes all

---

[2] The procedural history is more fully set out in this Court's Order & Opinion on Defendants' Motion to Dismiss (Doc. 45).

reasonable inferences in favor of the nonmoving party. *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 389 (7th Cir. 2018).

DISCUSSION

As stated, Defendants allege seven claims in their Countercomplaint (Doc. 46). Relator argues all seven claims fail due to a doctrine sounding in public policy that bars counterclaims in FCA cases and that each claim is deficient in some additional respect. The Court will review Relator's public policy argument first and turn to Relator's additional arguments only on surviving claims.

**I. Public Policy**

As an initial matter, the Court finds Relator's argument that allowing Defendants' counterclaims would be against public policy is sufficiently developed to be reviewed and therefore not waived, contrary to Defendants' argument. While the Court agrees this argument is not particularly well-developed in Relator's memorandum of law, it has been developed beyond the "perfunctory one-sentence assertions" Defendants reference. *See United States v. Key*, No. 14-cr-5624, 2016 WL 3693427, at *3 (N.D. Ill. July 12, 2016) (St. Eve, J.); *Gerrard v. Garda Sec., Inc.*, 08-cv-1146, 2011 WL 3511481, at *6. (C.D. Ill. Aug. 11, 2011) (suggesting an argument was undeveloped and therefore waived where it was solely a conclusory statement). Relator's failure to explain how or why each counterclaim seeks to shift the blame does venture perilously close insufficiency, especially with regard to Counts VI and VII which do not on their face seek contribution or indemnification. However, the citation to numerous other cases along with parentheticals discussing their holdings

3

clearly sufficed to allow Defendants to meaningfully respond and is enough for this Court to review the merits of the argument.

This public policy argument covers well-trod ground; the first instance of counterclaims being barred in an FCA case was in 1947. *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 505 F. Supp. 2d 20, 25 (D.D.C. 2007) (citing *United States ex rel. Rodriquez v. Weekly Publ'ns*, 74 F. Supp. 763, 769 (S.D.N.Y. 1947)). There is wide-spread consensus among the federal courts that an FCA defendant may not file a counterclaim seeking contribution or indemnification, nor a counterclaim which has the equivalent effect of contribution or indemnification. *Id.* at 26 (stating the rule and collecting cases). "The reason for the rule is simple to understand; without it, relators would be discouraged from bringing suit, thereby 'imperil[ing] the federal interests which the FCA seeks to vindicate.' " *United States ex rel. Nehls v. Omnicare, Inc.*, No. 07 C 05777, 2013 WL 3819671, at *20 (N.D. Ill. July 23, 2013) (quoting *Miller*, 505 F. Supp.2d at 26). Because the FCA itself provides for a reduction or elimination of a relator's share of the ultimate award due to the relator playing a leading role in the fraud, 31 U.S.C. § 3730(d)(3), allowing counterclaims amounting to indemnification or contribution would also "upset the carefully calibrated framework under which relator compensation is to be figured." *Id.* (quoting *Miller*, 505 F. Supp. 2d at 26).

Counterclaims by an FCA defendant are allowed in two circumstances. First, counterclaims may be brought which arise from conduct unrelated to the FCA claims and which do not "require as an essential element that the FCA defendant was

liable—or not liable—in the FCA case." *Miller*, 505 F. Supp. 2d at 27 (providing as examples cases in which unrelated billing records were deleted, the relator breached a fiduciary duty by failing to deliver a subpoena sent to her as the *qui tam* defendant's agent, and costs were awarded for serious litigation abuses occurring after the FCA violations). Second, counterclaims are allowed "where the defendant's claim, though bound up in the facts of the FCA case, can only prevail if the defendant is found *not* liable in the FCA case." *Id.* at 27–28 (providing as examples defamation, libel, malicious prosecution, and abuse of process). "The simple rule that emerges from these cases is therefore that a claim by an FCA defendant which requires for its success a finding that the FCA defendant is liable is the kind of claim barred by the FCA." *Id.*

Defendants contest the general rule as "unmoored from principled application," suggesting a parade of mere unthinking applications of precedent devoid of thoughtful development throughout the cases resulted in the consensus of the other federal courts. (Doc. 56 at 17). This argument is necessary because Defendants concede Counts II through V do not survive the application of this test.

Foremost among this Court's responses is that judges are not unthinking automatons reflexively adopting statements made in other cases and applying nonbinding precedent[3] without considering whether it ought to be applied. The

---

[3] The parties have not cited, and the Court has not found, any Seventh Circuit or Supreme Court precedent—or even any precedent of this Court—on point. The Court therefore believes itself to not be bound to dismiss claims on the basis of this argument.

reason for this consensus on public policy is that it is persuasive. Well-written and well-reasoned opinions are convincing to other courts. There is no need to reinvent the wheel—indeed, our legal system is premised on doing precisely the opposite. So, when a judge finds all that need be said has already been said eloquently by another court, it is both natural and an efficient use of judicial resources to quote and paraphrase the other court, with gratitude. "Any decision may have persuasive force, and invite—indeed compel—the careful and respectful attention of a court confronted with a similar case. But unless the earlier decision is authoritative, the court that decides the later case does not discharge its judicial responsibilities by merely citing the earlier decision and following it without so much as indicating agreement with it, let alone analyzing its merits." *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1123 (7th Cir. 1987). The Court is disinclined to believe every federal court to have considered the issue over the last seventy years has abdicated its judicial responsibilities. That the cases applying this policy cite to one another does not show lack of thoughtful development as Defendants suggest—it shows agreement.

The public policy is far from untethered. The FCA seeks to protect taxpayer funds from being wrongfully obtained through fraud on the government. *United States ex rel. McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 464 F. Supp. 2d 1327, 1341 (N.D. Ga. 2006) (citing *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 551 (1943)). In order to ensure fraudulent schemes are uncovered, Congress created the private suit provision of the FCA to incentivize those with knowledge of fraud to come forward. *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1376–

77 (D.C. Cir. 1981) ("To encourage actions against defrauders, Congress authorized private citizens to bring civil actions against wrongdoers on the Government's behalf, and to retain half of any recovery."). This provision is not designed only to encourage innocent parties who happen upon fraud to report; it also serves to drive a wedge between conspiring fraudsters and entice persons involved to turn upon a fraudulent scheme. *Miller*, 505 F. Supp. 2d at 25–26. Indeed, a careful reading of the statute shows it contemplates almost the precise situation Defendants allege is occurring here. *Compare* 31 U.S.C. § 3730(d)(3) ("[I]f the court finds that the action was brought by a person who planned and initiated the violation . . . the court may . . . reduce the share of proceeds of the action which the person would otherwise receive . . . .") *with* (Doc. 56 at 16 ("[I]t is another [thing] when that policy is simply applied mechanically to protect a purported whistleblower who was actually <u>in charge</u> of the purported wrongdoing . . . .")). Congress has adjusted the incentives as it thinks fair here; courts, recognizing that, have sought to preserve the congressionally-sanctioned balance.

Moreover, any crack in this wall could result in the whole edifice crumbling. If the rule were not a bright line but instead allowed contribution or indemnity in some cases, an unscrupulous party would need only plead their counterclaim to match prior cases in which such counterclaims had been allowed in order to retaliate against an informer. And the burdens between the motion-to-dismiss phase, where the Court must accept potentially false statements as true, and the summary-judgment phase, when it need no longer do so, might suffice to deter persons with information about fraud on the government from reporting. Therefore, even if it would make sense to

allow counterclaims for contribution and indemnification in this case, the next FCA defendant might simply—and falsely—claim their case is indistinguishable.

The Court finds the consensus of federal cases persuasive and holds counterclaims in an FCA case seeking contribution or indemnification, or the effective equivalent thereof, may not be brought for reasons of public policy. Because Defendants concede such a holding bars Counts II through V of their Countercomplaint, Counts II-V are dismissed. Amendment would be futile because these counts amount solely to claims for contribution or indemnity, so they are dismissed with prejudice.[4] *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 518 (7th Cir. 2015).

Count I seeks to hold Relator liable under the FCA. (Doc. 46 at 26–27). As currently presented in the Countercomplaint, Count I argues "if false claims were in fact submitted to the United States, then it was" Relator who did so, and Relator's own allegations suffice to show her liability. (Doc. 46 at 26–27). Defendants are inconsistent on whether this claim requires them to be held liable (Doc. 56 at 2 ("Counts I-V are all claims that seek to hold [Relator] liable to the Government and/or [Defendants] *if* [Defendants are] liable to the Government")) or requires them to be found not liable (Doc. 56 at 17 ("If there was a scheme to defraud, it was a scheme of [Relator's] own making which she did not share with [Defendants].")). As discussed above, this is the very question on which the permissibility of a counterclaim turns.

---

[4] As will be discussed further *infra*, not all breach of contract counterclaims are futile; Count II is dismissed with prejudice only insofar as it seeks actual contribution.

Because Count I suffers from other fatal defects warranting dismissal with prejudice, discussed in Section II, *infra*, the Court need not determine whether it also depends on a finding of liability and therefore warrants dismissal as contrary to public policy.

Counts VI and VII seek to disgorge payments to Relator, alleging she either failed to perform her contractual duties by not ensuring compliance with Medicare billing regulations (Count VI) or, in the alternative, it would be unjust enrichment for her to keep the payments despite the lack of a contract because she failed to earn any compensation by not ensuring compliance (Count VII). These counts fall into a grey area. They are not factually independent of the FCA action because they require, at a minimum, that Relator submitted false or fraudulent claims for physical therapy performed by Defendants to the United States for reimbursement. (Docs. 46 at 30–31; 56 at 6). A jury could find Relator submitted false claims, thus breaching her contract (or being unjustly enriched), but could nonetheless find Defendants did not know of the false submissions, making them not liable under the FCA. Therefore, Counts VI and VII do not require Defendants be found either liable or not liable to succeed.

The Court finds the Ninth Circuit's analysis of this issue persuasive. In *United States ex rel. Madden v. Gen. Dynamics Corp.*, 4 F.3d 827, 831 (9th Cir. 1993), that court explained "some mechanism must be permitted to insure that relators do not engage in wrongful conduct in order to create the circumstances for qui tam suits . . . . Counterclaims for independent damages serve" this purpose. "Claims for independent damages are distinguishable from claims for indemnification or contribution, which,

by definition, '*only* have the effect of offsetting liability.' " *Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1208 (9th Cir. 2009) (quoting *Madden*, 4 F.3d at 831) (emphasis in original). In light of this definition and the due process concerns which could arise from barring compulsory counterclaims, the Court thinks Counts VI and VII should not be dismissed as contrary to public policy.

However, to avoid an end-run around public policy the Ninth Circuit suggests resolving the FCA claim before the counterclaims and dismissing counterclaims if the FCA defendant is liable "on the ground that they will have the effect of providing for indemnification or contribution. On the other hand, if a qui tam defendant is found not liable, the counterclaims can be addressed on the merits." *Id.* at 1209 (quoting *Madden*, 4 F.3d at 831). To effectuate this sequential resolution, the Ninth Circuit cited with favor a Southern District of Ohio case which ordered separate trials on FCA liability and the counterclaims under Federal Rule of Civil Procedure 42(b). *Id.* at 1209 n.3 (citing *Burch ex rel. United States v. Piqua Eng'g, Inc.*, 145 F.R.D. 452, 457–58 (S.D. Ohio 1992)). This Court agrees the prudent course is to bifurcate the FCA claim and counterclaims. Thus, should both the FCA claim and the counterclaims be tried, they will be tried separately under Federal Rule of Civil Procedure 42(b).

## II.    False Claims Act – Count I

Relator argues Defendants have not followed the proper procedural requirements in attempting to hold Relator liable under the FCA in Count I of their Countercomplaint. (Doc. 52 at 3). Defendants contend they are not bringing an original action but rather bringing Relator in as an additional defendant to her

existing claim. (Doc. 56 at 18). They also claim this argument is underdeveloped (Doc. 56 at 18), but the Court does not agree. Relator has sufficiently argued that Defendants are barred from filing an FCA claim by the statutory limitations on filing a *qui tam* FCA claim.

The Court agrees Defendants cannot maintain Count I. The provisions of the FCA dealing with *qui tam* suits make clear the ability of anyone other than the Attorney General to file FCA suits is strictly circumscribed. And the instant claim must be dismissed pursuant to 31 U.S.C. § 3730(e)(4)(A), which states: "The court shall dismiss an action *or claim* under this section, unless opposed by the Government, if substantially the same allegations or transactions in the action or claim were publicly disclosed in a Federal criminal, civil, or administrative hearing . . . [or] from the news media, unless . . . the person bringing the action is an original source of the information." (emphasis added).

The Seventh Circuit has set forth a three-step procedure for analyzing whether the public disclosure bar prevents the filing of such claim or action: "First, the court examines whether the allegations in the complaint have been 'publicly disclosed' before the relator filed the complaint. The court then determines whether the relator's lawsuit is 'based upon' those publicly disclosed allegations. If these first steps are satisfied, the public disclosure bar applies unless the relator is an 'original source' of the information upon which the lawsuit is based." *City of Chicago ex rel. Rosenberg v. Redflex Traffic Sys., Inc.*, 884 F.3d 798, 803 (7th Cir. 2018).

Information in unsealed documents filed with a court is publicly disclosed under § 3730(e)(4)(A). *See United States v. Bank of Farmington*, 166 F.3d 853, 860–61 (7th Cir. 1999) *overruled on other grounds by Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 915–20 (7th Cir. 2009); *United States ex rel. McKenzie v. BellSouth Telecomm., Inc.*, 123 F.3d 935, 939 (6th Cir. 1997) (" 'Public disclosure' also includes documents that have been filed with a court, such as discovery documents and a plaintiff's complaint."). And, if that were not already sufficient, reporting on this case discussed the allegations in Relator's Complaint, so there was public disclosure by the news media as well. Sophia Morris, *Illinois Physical Therapy Co. Can't Duck FCA Suit*, Law360 (Oct. 22, 2018 6:48 PM), https://www.law360.com/articles/1094288. There can be no question that by the time Defendants filed their Counatercomplaint, the information in Relator's Complaint had been publicly disclosed.

Much ink has been spilled on the "based upon" requirement. *Glaser*, 570 F.3d at 914–21. But the analysis is mercifully simple in this case. To be "based upon" publicly disclosed information, the allegations in a claim need only be "substantially similar" to it. "Under current law, a relator must present genuinely new and material information beyond what has been publicly disclosed." *Rosenberg*, 884 F.3d at 804 (citations and internal quotation marks omitted). Here, Defendants' counterclaim is explicitly and solely based upon the allegations in Relator's Complaint; it presents no new information. (Doc. 46 at 27 ("By Morgan's own allegations, she is a person who knowingly presented or caused to be presented for payment false records and

statements, which she made in order to get a false or fraudulent claim paid by the government.")).

Defendants do not argue they are "original sources" in the meaning of 31 U.S.C. § 3730(e)(4)(B), with good reason. An original source is one who either "voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based" before public disclosure or who had knowledge which "is independent of and materially adds to the publicly disclosed transactions" and voluntarily provides such information to the government before filing. § 3730(e)(4)(B). Ordinarily, it would be reasonable to infer under the circumstances that Defendants had direct knowledge independent of Relator's claims. But, Defendants allege they "learned for the very first time of . . . misconduct allegedly occurring while [Relator] was [Defendants'] billing manager" on May 10, 2018, when Relator's Complaint was unsealed. (Doc. 56 at 14). Therefore, there is no need for a detailed inquiry here as Defendants admit their knowledge is solely from Relator's allegations. The Court thus concludes Count I is prohibited by the public disclosure bar.

Defendants nevertheless claim "[t]he Federal Rules (particularly Rules 19 . . . and 13 . . .)" allow them to add Relator as a counterclaim defendant and therefore "the FCA does not need to be tracked in all its particulars to add her as a party *to the United States' claim*." (Doc. 56 at 18 (emphasis in original)). The Court will not scour all of the Federal Rules of Civil Procedure to determine why Defendants think Rules 13 and 19 are "particularly" as opposed to exclusively sufficient here. At any rate, Rules 13 and 19 do not help Defendants, and Defendants fail to explain why they

believe otherwise. Rule 13 generally covers counterclaims but does not give parties any special ability to bring claims they would otherwise be barred from bringing. Nor does Rule 19 on its face contemplate the sort of realigning Defendants suggest. Perhaps Defendants are hinting that something in the interaction of these Rules or the ample caselaw which have developed around them would shield Defendants' counterclaim from dismissal; but Defendants have done what they repeatedly accuse Relator of and presented the Court with an underdeveloped argument incapable of review.

To the extent Defendants attempt seek to slip free of § 3730(e)(4)(A) by arguing they are not bringing a new claim but rather participating in the United States' claim, their ability to proceed is foreclosed by § 3730(b)(5), which provides: "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." An attempt by a defendant to intervene as a relator and turn the tables on the original relator is clearly blocked under this provision. If this is what Defendants meant by an attempt to add Relator to the Government's claim, and the Court does not see what other meaning Defendants could have had, their claim is barred for this reason as well. The Court thus dismisses Defendants' FCA claim, Count I of the Countercomplaint, with prejudice.[5]

---

[5] Although "the dismissal of a section 3730(b)(5) claim ordinarily should be without prejudice," *United States ex rel. Gadbois v. Pharmerica Corp.*, 809 F.3d 1, 3 (1st Cir. 2015), the Court has concluded this claim is barred under the public disclosure bar as well, so refiling would be futile.

## III.     Breach of Contract Seeking Disgorgement – Count VI

Count VI states a claim for breach of contract with disgorgement as the remedy.[6] Relator argues (1) if there was a breach, it is outside the statute of limitations; (2) Defendants fail to properly allege breach of contract; (3) granting the claim would provide a windfall to Defendants; (4) disgorgement requires a fiduciary duty and none existed between Relator and Defendants; and (5) a simple breach of contract cannot allow for disgorgement.[7] (Doc. 52 at 4-6, 9-10). The Court notes this is a claim under Illinois law, before this Court on supplemental jurisdiction; consequently, Relator's arguments are analyzed under Illinois law.

### A.     *The Statute of Limitations*

The parties agree a 5-year statute of limitations applies to this breach of contract claim. (Docs. 52 at 4, 56 at 13); 735 ILCS 5/13-205. However, Defendants assert the cause of action accrued, triggering the statute of limitations, in either March 2015 or May 2018. (Doc. 56 at 14). They also claim Relator's argument is underdeveloped to the point of waiver because she does not discuss the accrual date. (Doc. 56 at 14). The Court does not agree the argument is underdeveloped because, as will be discussed, it approaches the question in the ordinary situation rather than where the discovery rule applies. However, the discovery rule does apply here so the statute of limitations does not bar Count VI.

---

[6] Relator suggests Defendants have attempted to state disgorgement as a cause of action, but the Countercomplaint clearly alleges there was a breach of contract and the claim is entitled "Breach of Contract/Disgorgement." (Doc. 46 at 30).

[7] The fifth argument is discussed in Section III.B.3, *infra*, rather than in an independent section.

"For contract actions . . . the cause of action ordinarily accrues at the time of the breach of contract, not when a party sustains damages." *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1135 (Ill. 1995). However, the potential harshness of a statute of limitations is tempered by the "discovery rule" which "delays the start of the relevant statute of limitations until the claimant knows or reasonably should have known of the injury and that the injury was wrongfully caused." *Am. Family Mut. Ins. Co. v. Krop*, --- N.E.3d. ---, 2018 IL 122556, ¶ 21. The applicability of the discovery rule depends on the underlying facts rather than the type of action. *Hermitage Corp.*, 651 N.E.2d at 1136. The essential question is whether the injured party is reasonably "unaware of an injury and its wrongful cause." *Id.*

Taking as true Defendants' claims—as is required in reviewing a motion to dismiss—Defendants were unaware Relator was submitting claims which did not comply with federal law and could not reasonably be aware because Relator was the agent ensuring compliance. (Doc. 46 at 25-28). Therefore, the discovery rule applies. "When a complainant should have discovered an injury is a question of fact, but [a] court can determine when the limitations period began if the facts are undisputed and only one answer is reasonable." *Am. Family Mut. Ins. Co.*, 2018 IL 122556 at ¶21. The Court does not know whether Relator would dispute the facts, but at this posture facts are viewed, and inferences are drawn, in the light most favorable to the non-moving party. So illuminated, it is possible to conclude Defendants could not reasonably discover the injury until either 2015 or 2018—regardless of which, within

the statute of limitations. Therefore, this counterclaim cannot be dismissed at this stage based upon the statute of limitations.

B. *Defendants Properly Pled Breach of Contract*

"In Illinois, a breach of contract claim consists of: 1) the existence of a valid and enforceable contract, 2) breach of the contract by the defendant, 3) performance by the plaintiff, and 4) resulting injury to the plaintiff." *Northbrook Bank & Tr. Co. v. Abbas*, 102 N.E.3d 861, 874 (Ill. App. Ct. 2018). Relator argues Defendants have not alleged the existence of a valid contract, breach, or damages.

### 1. The existence of a valid contract

Relator's argument that Defendants failed to allege the existence of a valid contract is twofold. First, she claims their allegations are conclusory; second she claims the alleged contract did not have definite and certain terms. (Doc. 52 at 5-6). The Court will take these contentions in turn.

Before reaching whether the allegations are conclusory, it is necessary to discuss what law this argument is evaluated under. This counterclaim is before this Court through supplemental jurisdiction. (Doc. 46 at 24-25). Therefore, the doctrine set forth in *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), is implicated. *Houben v. Telular Corp.*, 309 F.3d 1028, 1032 (7th Cir. 2002). This is a motion under Federal Rule of Civil Procedure 12(b)(6), and the procedural law applied is federal law; accordingly, federal pleading standards are applied. *See Alsenz v. Aurora Bank, FSB*, 641 F. App'x 359, 363–64 (5th Cir. 2016). Of course, these pleading standards are applied to the elements as set out under Illinois law. But Relator's citation of an Illinois case discussing pleading standards (Doc. 52 at 5) is inapposite.

"To establish the formation of a valid and enforceable contract under Illinois law, a plaintiff must prove that there was an 'offer, acceptance and existence of valuable consideration.'" *Jada Toys, Inc. v. Chi. Import, Inc.*, No. 07-C-699, 2009 WL 3055370, at *6 (N.D. Ill. Sep. 18, 2009) (quoting *Gallagher Corp. v. Russ*, 721 N.E.2d 605, 611 (Ill. App. Ct. 1999)). Defendants' allegations of consideration are clear. (Doc. 46 at 25 ("Beginning in 1998, [Defendants] paid [Relator] 6% of all revenue received from the United States Government and from private insurers in exchange for the services [Relator] provided.")). Defendants also allege (1) they "hired" Relator, (2) Relator provided them services in exchange for retaining the fee, and (3) they had a contract with Relator. (Doc. 46 at 25-28).

Even accepting the allegation of a contract is conclusory, Defendants have pled enough. "Legal conclusions can provide the framework of a complaint so long as they are supported by factual allegations." *Catinella v. Cty. of Cook, Ill.*, 881 F.3d 514, 517 (7th Cir. 2018) (citations, internal quotations, and alterations omitted). By pleading they "hired" Relator and pleading they paid her in exchange for services, Defendants have provided sufficient information to allow a reasonable inference that an offer was made and accepted.

Relator's argument that the contract was invalid for lack of definite and certain terms fails on substantive grounds. It is true that under Illinois law, the plaintiff must "allege, *inter alia*, the definite and certain terms of the parties' agreement." *Romanek v. Connelly*, 753 N.E.2d 1062, 1071 (Ill. App. Ct. 2001). But Defendants have alleged definite and certain terms in their counterclaim: namely, Morgan would

receive 6% (later raised to 7.5%) of all revenue from the Government and private insurers in exchange for providing billing services ensuring Defendants "were abiding by all laws, rules, and regulations with respect to billing both private insurers and the United States government for physical therapy services." (Doc. 46 at 25). The Court takes this allegation to be true, as is required in reviewing a motion to dismiss. These are definite and certain terms sufficient to show a valid contract. *Compare Romanek*, 753 N.E.2d at 1072 (dismissing a complaint for failing to plead definite and certain terms where the complaint did not explain the portion of a fee the plaintiff alleged she was entitled to under a fee-sharing agreement).

### 2. Breach

Relator's argument that Defendants have failed to allege breach takes aim at the very concept of argument in the alternative, arguing that Defendants cannot plead at once that no false claims were submitted and that if any were, Relator submitted them. (Doc. 52 at 6). An argument in the alternative allows a litigant to make arguments which cannot both be true. Fed. R. Civ. P. 8(d)(2-3) ("A party may set out 2 or more statements of a claim or defense alternative or hypothetically . . . . A party may state as many separate claims or defenses as it has, regardless of consistency."). Rule 8(d) thus allows "any litigant . . . [to] make a tactical choice to present two conflicting positions as an argument in the alternative." *ACLU of Nev. v. Masto*, 670 F.3d 1046, 1064 (9th Cir. 2012); *United States v. Richardson*, 427 F.3d 1128, 1135 (8th Cir. 2005) (Melloy and Heaney, JJ., concurring) ("[I]t is fundamental that a party may advance arguments in the alternative . . . .") *vacated in part on other*

*grounds* 439 F.3d 421 (8th Cir. 2006) (en banc). Defendants have properly pled breach, in the alternative to their denials.

### 3. Injury & Disgorgement as a Remedy for Breach of Contract

For the reasons discussed above, a breach-of-contract counterclaim cannot survive if the injury element is dependent on Defendants being found liable under the FCA. However, a claim may survive if the payments to Relator for services allegedly not performed present a cognizable injury with disgorgement, rather than contribution or indemnification, as the remedy.

The Court finds instructive on this point *In re Illinois Bell Telephone Link-Up II*, 994 N.E.2d 553 (Ill. App. Ct. 2013). That case saw a class counsel attempt to enforce a settlement agreement, which required proof of damages under contract law. *Id.* at 558. The damages sought were "a full refund for all late payment charges, regardless of whether the reason the late payment fee was assessed was due to" the alleged breach "or for other reasons entirely." *Id.* at 560. The reviewing court concluded the trial court had correctly rejected the request for the disgorgement of all late fees because class counsel "failed to maintain his burden to show damages proximately caused by the breach to warrant the requested relief." *Id.* However, the court implied the payment of unwarranted late fees could serve as damages, and consequently their disgorgement as a remedy, if class counsel had shown they were tied to the purported breach. *Id.* at 561.

Under this interpretation, Defendants have properly pled damages; the payment for services not actually rendered suffices. However, the Court notes its concern that Defendants have taken the same "all-or-nothing position on the remedy"

as the class counsel in *Illinois Bell Telephone Link-Up II*. *Id.* at 560. They ask for disgorgement of "all payments made to [Relator] in the [t]ime [p]eriod" even though the contract was allegedly for ensuring compliance "with respect to billing both private insurers and the United States government for physical therapy services" and the alleged breach the submission of false claims to the United States. (Doc. 46 at 25, 28, 31). But the Court does not think this issue can be addressed at the pleading stage.

Relator's fifth argument, that a breach of contract claim alone cannot serve as the basis for disgorgement, is appropriate to discuss here as well. This argument is severely underdeveloped—Relator solely states she has not found Illinois authority to support such a proposition, provides a one-sentence policy argument, and concludes by suggesting this Court ought not "be the first to adopt such precedent." (Doc. 52 at 10).

As *Illinois Bell Telephone Link-Up II* indicates, an amount of damages effectively disgorging money paid to a breaching party may be an appropriate remedy for a breach of contract. This Court would not be the first to adopt such a theory. Moreover, Relator's policy concerns are addressed by the causation limitations. Relator claims if a party "can recover all of the monies that they paid out to [the] party that insufficiently performed," then "independent contractors, contracting parties, and even employees will always be at risk of forfeiting whatever monies had been historically provided to them." (Doc. 52 at 10). But as discussed above, a party is not able to disgorge *all* the benefit received by the breaching party. Rather,

disgorgement may be appropriate only where the "damages [are] proximately caused by the breach." *In re Ill. Bell Tel. Link-Up II*, 994 N.E.2d at 560. Thus, the breaching party would only be required to return money paid for services not rendered.

This makes sense because "[t]he proper measure of damages for breach of a contract is the amount of money necessary to place the plaintiff in a position as if the contract had been performed." *Id.* at 558. Therefore, to the extent a party pays another party to perform a service which is not performed, that payment should be recoverable even if no other damages are legally recoverable. But it does not place all employees in a position where all earnings are subject to potential disgorgement; if an employee (or contractor) is paid for ten hours of work but works nine, only the pay for the tenth hour may be disgorged.[8]

C.  *Disgorgement Would Not Necessarily Result in a Windfall to Defendants*

Relator's argument that awarding disgorgement to Defendants would result in a windfall rather than curing harm fails for similar reasons to her arguments on disgorgement as a remedy for breach of contract. Disgorgement would allow Defendants to recover only money paid to Relator for services she did not provide, as discussed above. It would not be a windfall for them to receive such disgorgement since the remedy would essentially allow Defendants to rescind their performance of

---

[8] This issue may also be a problem of framing. As the Seventh Circuit has explained, disgorgement may be equal to expectation damages in some cases. *W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co., Inc.*, 794 F.3d 666, 679 (7th Cir. 2015). Defendants seek damages in the amount of the payments to Relator—accordingly, the assertion is their loss (or at least, their recoverable loss) equals Relator's gain. *Id.*

the portion of the contract Relator did not perform. Again, disgorgement would only ensure Defendant could recover amounts paid for services not actually rendered.

    D.    *The Remedy of Disgorgement Does Not Require a Fiduciary Duty*

Relator argues "it appears that, under Illinois law, for disgorgement to be appropriate there must first exist an underlying fiduciary relationship between the parties." (Doc. 52 at 10). Relator then cites two cases which are completely inapposite, *Levy v. Markal Sales Corp.*, 643 N.E.2d 1206, 1219–20 (Ill. App. Ct. 1994), and *Tully v. McLean*, 948 N.E.2d 714, 737 (Ill. App. Ct. 2011). (Doc. 52 at 10). Both deal with the doctrine of forfeiture under claims for breach of fiduciary duty—and it is hardly surprising that claims for breach of fiduciary duty require as an element the existence of a fiduciary duty. But forfeiture in those cases allows a complete loss of a salary even if it would more than compensate the plaintiff, differing in a crucial respect from the award sought here. *Levy*, 643 N.E.2d at 1221. As the Court has held, for a breach of contract claim, the only damages available are those proximately caused by the breach.

At any rate, Relator has not set out an argument that disgorgement is inappropriate absent a fiduciary duty under Illinois law, only that forfeiture is appropriate for a claim of breach of fiduciary duty. And, *In re Illinois Bell Telephone Link-Up II* suggests that disgorgement may be appropriate where no fiduciary duty exits. 994 N.E.2d at 560–61. Relator's argument is therefore rejected.

## IV.    Unjust Enrichment – Count VII

Relator next argues Defendants' unjust enrichment claim, Count VII, fails due to the statute of limitations and because unjust enrichment requires the defendant

to have failed to pay for service rendered, rather than the defendant to have failed to perform services paid for. The statute of limitations argument fails for the reason discussed above, namely, the application of the discovery rule. Section III.A, *supra*.

Relator's argument about the substantive law of unjust enrichment is similarly devoid of merit. As the Seventh Circuit has explained, under Illinois law "[u]njust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust." *Cleary v. Phillip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Relator's utterly unwarranted conclusion that because three cases phrase this in terms of failure to pay for goods or services, the action is only available to parties providing goods or services does not persuade the Court. (Doc. 52 at 11) (citing *Haynes Mech., Inc.*, 812 N.E.2d 419, 426 (Ill. App. Ct. 2004); *Karen Stavins Enters., Inc. v. Comm. College Dist. No. 508*, 36 N.E.3d 1015, 1018 (Ill. App. Ct. 2015); and *Cannella v. Vill. of Bridgeview*, 673 N.E.2d 394, 400 (Ill. App. Ct. 1996)). Here, Defendants allege Relator accepted a benefit—money—under circumstances that would make it unjust for her to retain it, namely the understanding that she would ensure compliance with federal law. The claim survives a motion under Rule 12(b)(6).

## V.    Expectations for Future Filings

Relator and Defendants continue to skirt frivolity in their arguments. The Court has been lenient, but this is the final warning to both sides: arguments will have a sound basis in the law, Fed. R. Civ. P. 11(b)(2), with supporting authorities provided in filings, CDIL-LR 7.1(B)(1-2), and pleadings will comply with the Local and Federal Rules. This Court will not countenance the so-called "spaghetti

approach" to litigation whereby the parties "heave[] the entire contents of a pot against the wall in hopes that something [will] stick" *Indep. Towers of Wash v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Moreover, the Court will not attempt to grapple with every hint of an argument no matter how poorly developed: as the Seventh Circuit has now repeatedly explained, "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

The Court will make its expectations perfectly clear. The parties should cite applicable precedent when making their points. Points of law should be adequately researched, rather than merely finding a single statement which could be offered in support; it should also be clear that counsel ought to read, at the very least, the entirety of the paragraph containing the phrase they cite. Arguments that begin "it appears" should be followed with a thorough explanation of the law or facts, why the law is not yet settled or the facts unclear, and why the party's preferred approach should be adopted. Disagreement with persuasive authority cited by the opposing party should fully engage with the reasoning of that authority. And responses cannot survive solely on pointing to a prior pleading if the opposing side has cited cases, but at a minimum should explain why the cited cases do not apply or the why a pleading satisfies the standard in those cases. The reason for this—the reason the Court raises this issue at all—is every issue with the local rules and every failure to have an apposite citation slows the pace of litigation in this case and diverts judicial resources from other cases on the docket as the Court attempts to fill the gaps left by the parties.

Further frivolous arguments or filings will result in orders to show cause why the filing counsel should not be sanctioned. And further failure to adhere to the Federal Rules of Civil Procedure and Local Rules will result in pleadings being struck, in whole or in part, which may in turn result in motions being denied without consideration of the merits or ruled upon as unopposed. The Court's leniency ends here.

CONCLUSION

Relator's Motion (Doc. 51) is GRANTED IN PART and DENIED IN PART. Counts I-V are DISMISSED WITH PREJUDICE. Counts VI and VII may continue but should both Relator's FCA claim and the counterclaims be tried, they will be tried separately under Federal Rule of Civil Procedure 42(b) and Counts VI and VII will be dismissed as contrary to public policy if Relator's FCA claim succeeds.


SO ORDERED.

Entered this 19th day of February 2019.

s/ Joe B. McDade<br>
JOE BILLY McDADE<br>
United States Senior District Judge